## AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

**The premises to be searched are described as a private office located in a commercial office building leased by the National Aeronautics and Space Administration (NASA located at 300 E Street, S.W., Washington, D.C. Room 3X78. The room is marked 3X78 outside and the doorway and the room are located on the east side of the building's third floor.**

I, Paul R. Danley, being duly sworn, depose and state as follows:

## TRAINING & EXPERIENCE OF AFFIANT

(1)      I am a Special Agent assigned to the Computer Crimes Division (CCD) of the Office of Inspector General (OIG), National Aeronautics and Space Administration (NASA).  I am currently posted at the NASA Langley Research Center, Hampton, Virginia.  I have been employed by the NASA OIG since September 2000.  I was previously employed as an Associate Network Administrator in the private sector and a Special Agent with the Air Force Office of Special Investigations for almost eight years.  During my career as a Special Agent with the U.S. Government, I have been assigned to investigate computer and technology crimes in violation of the laws of the United States.  I have received extensive specialized training in the investigation of computer, telecommunications, and other high technology crimes directed at the U.S. Government.  Below, I have listed some of the major computer and technology crime courses I have completed:

   A.  Electronics Training, U.S. Air Force; 1985-1986

   B.  Avionics Cross Utilization Training, U.S. Air Force; 1990

   C.  Basic Technical Agent Course, Air Force Office of Special Investigations; 1995

   D.  Microsoft Certified Systems Engineer, New Horizons; 1999

   E.  Various Computer and Network Security Courses, SANS Institute 2000; 2000

1

F. Advanced Automated Information Systems; Aegis Research Corporation; 2000

G. Seized Computer and Evidence Recovery Specialist, Federal Law Enforcement Training Center; 2001

H. SANS Institute Track 4: Hacker Techniques, Exploits and Incident Handling, SANS; 2001

I. Networks and Networking for Agents, Sytex; 2001

J. Red Hat Linux System Administration, Red Hat; 2001

K. The Good Guys' Guide to Network Vulnerability Testing, MIS Training Institute; 2001

L. Testing Firewalls and Network Perimeter Security, MIS Training Institute; 2002

M. UNIX and Linux Security: Hands-On, Learning Tree International; 2002

N. Introduction to PERL: Hands-On, Learning Tree International, 2002

O. Hands-on Unix and Linux Tools and Utilities, Learning Tree International, 2002

P. GMU-2002, High Technology Crime Investigation Association

Q. Advanced Data Recovery Analysis – Internet Trace Evidence, 2003

R. PDA Operating System and PDA Seizure, Paraben Corporation, 2003

S. Continuing Education – ILook, DoD Computer Investigations Training Program, 2005

T. Network Security I & II, Global Knowledge, 2005

U. Assessing Network Vulnerabilities: Hands On, Learning Tree International, 2005

V. Advanced SMART Linux Data Forensics, ASR Data Acquisition and Analysis, 2005

W. DoD Cybercrime Conference and Training, 2006

In addition, I am A+ Certified, a Paraben Certified PDA Examiner, a Certified Computer Examiner (#394), I hold a Masters of Science degree in Computer Information Systems from the

2

University of Phoenix, and I have previously investigated cases involving the sexual exploitation of children.

## PURPOSE OF AFFIDAVIT

(2).    I make this affidavit in support of an application for a search warrant at one location for evidence of violations of Title 18 U.S.C. Section 2252 – Certain activities relating to material involving the sexual exploitation of minors.  As set forth herein, I respectfully submit that there is probable cause to believe that the items sought by this application for a search warrant constitute evidence of violations of the aforementioned federal statute.

(3).    Since this affidavit is being submitted for the purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence of the commission of a criminal offense, possession and transportation and/or shipment of visual depictions of minors engaged in sexually explicit conduct, 18 U.S.C. § 2252 is more likely than not to be found at the below described location.

(4).    Even though this affidavit is not an exhaustive recitation of everything that has been learned in my investigation, I do not believe that I have omitted any facts or circumstances herein that would decrease or vitiate the establishment of probable cause for the search warrant for which I am applying.

(5).    The facts set forth in this affidavit are largely derived from my own observations and my own investigation; however, some of the information in this affidavit was provided to me by other law enforcement officers – where that is the case, I have so indicated.

## THE LOCATION TO BE SEARCHED

3

(6).    Your affiant believes that evidence, fruits and instrumentalities of violations of Title 18 U.S. Code, § 2252 are now located within **NASA Headquarters office of James R. Robinson ("ROBINSON"),** which is located in **Room 3X78, 300 E. Street SW, Washington, DC 20546.**

(7).    Based upon the information contained in this affidavit, I have reason to believe that on the premises of the above location, there is located evidence relating to violations of said statute.

## BACKGROUND REGARDING COMPUTERS

(8).    The term "computer" as used herein is defined as set forth in 18 U.S.C. §1030(e)(1), and includes an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device.

(9).    I have had both training and experience in the investigation of computer-related crimes.  Based on my training, experience and knowledge, I know the following:

        a.    The Internet is a worldwide network of computer systems operated by governmental entities, corporations, and universities.  In order to access the Internet, the individual computer user must subscribe to an access provider, which operates a host computer system with direct access to the Internet.

        b.    A device known as a modem allows any computer to connect to another computer through the use of telephone lines/cable lines.  The modem may be internal or external to the computer.

        c.    By connection to an Internet Service Provider (ISP) host computer, an

individual with a computer can make electronic contact with millions of computers around the world.

       d.     A server is a computer that is attached to a dedicated network and serves many users.  An e-mail server allows users to post and read messages, and to communicate via private electronic mail.  An "IRC" server allows users to engage in "chat sessions", which are real-time conversations where the participants communicate by using their keyboards, to send and receive files, and to share information.

       e.     To access an ISP, one must pay a monthly fee to the ISP operator.  There are companies that provide free e-mail service and IRC or chat room access, however.

       f.     Using a modem, one can transmit and receive e-mail or IRC chats over telephone lines/cable lines between computers.

    (10).   Based on training that I have received and through my personal use of computers, I have knowledge of the method by which e-mails are transmitted over telephone lines/cable lines between computers.  Based on my training and knowledge I know the following:

       a.     With the modem, a computer user can transport a computer file to his own computer, so that the computer file is stored in his computer.  The process of transporting a file to one's own computer is called "downloading".

       b.     The user can then view the file on his/her computer screen (monitor), and can "save" or retain the file on his/her computer for an indefinite time period.

       c.     In addition to permanently storing the file on the computer, the user may print the file.

       d.     The original file that was downloaded is also maintained in the originating

computer.

      e.      With the modem, a computer user can send a file from the computer to another individual on the Internet.  This process of sending a file is called "uploading".

      f.      The process of "uploading" is similar to the "downloading" process except the user is sending the computer file to others instead of retrieving the information from another computer.

### DETAILS OF THE INVESTIGATION

    (11).   At all times material to this affidavit, NASA is an agency of the U.S. Government engaged in aeronautics research and space exploration activities funded by the taxpayers of the United States.  The CCD directs criminal investigations of felonious intrusions into NASA's telephony, Internet, and space systems networks, as well as high technology crimes involving NASA resources or employees.

    (12).   On December 7, 2005, Postal Inspector Wes Beaty ("Inspector Beaty"), U.S. Postal Inspection Service ("USPIS"), Seattle, WA, informed me that during an online undercover operation conducted by the USPIS that targeted traders of child pornography, a person using the name "JIM SARON" responded in March 2005 to approximately six undercover Postal Inspectors' advertisements to trade digital images and movies depicting child pornography. JIM SARON used an e-mail address of "jimsaron@yahoo.com" and the originating Internet Protocol ("IP") addresses on all of his e-mail correspondence were either IP 68.235.171.121 (registered to Adelphia Communications and believed to be his home Internet Service Provider) and IP 131.182.106.251 (belonging to NASA Headquarters, Washington, DC). During e-mail discussions between JIM SARON and approximately four of the undercover postal inspectors,

6

JIM SARON sent, via the "jimsaron@yahoo.com" account, two videos. Inspector Beaty informed me that he would contact the other Postal Inspectors that corresponded with JIM SARON and have them forward their information to me.  In addition, Inspector Beaty mentioned that JIM SARON used the Adelphia IP address to send the videos and the NASA Headquarters IP address to facilitate the transfer of the videos. Inspector Beaty referred this matter to NASA OIG to investigate.

(13).    On December 8, 2005, Steve Adair, NASA Headquarters Information Technology Security, informed me that IP 131.182.106.251 was assigned to JAMES R. ROBINSON and that the NASA Headquarters network domain controller logs showed his account ("jrobins1") was used to log into the NASA Headquarters network during the timeframe in question. I later determined that JAMES R. ROBINSON was a GS-15 Program Executive for the In Space Propulsion, Mission and Systems Management Division, NASA Headquarters, Washington, DC. His home address is XXXX, Sterling, VA 20165-6434.

(14).    On December 9, 2005, I received digital media that contained the investigative data collected by Inspector Beat including the videos sent to him as described above..  A review of the information disclosed several e-mail exchanges between "JimSaron@yahoo.com" and Inspector Beaty's undercover e-mail account concerning trading pictures and videos of "…under age 12, solo, with like ages or with adults" of both boys and girls.  In addition, JIM SARON mentioned that he was interested in "…both boys and girls, pics and vids, and have both girls and boys in my collection."  Several of these messages were sent from ROBINSON's NASA computer (IP 131.182.106.251).  On March 16, 2005, "jimsaron@yahoo.com" sent a message to Inspector Beaty's undercover e-mail account from IP 68.235.171.121 that contained two digital movies depicting child pornography.  Your affiant reviewed the aforementioned videos. The

movies depicted two different prepubescent girls: one movie was in color and depicted a girl masturbating and then having oral sex performed on her by an adult male and the second movie was in black and white and depicted a girl performing oral sex on what appeared to be an adult male.

(15).    On December 12, 2005, I received digital media that contained the investigative data collected by Postal Inspector Victor Evans ("Inspector Evans"), USPIS, New York, NY.  A review of the information disclosed several e-mail exchanges between "jimsaron@yahoo.com" and Inspector Evans' undercover e-mail account.  In these correspondences, JIM SARON mentioned on March 16, 2005 the following in response to Inspector Evans' question, "what are you into?": "Actually I am interested in both boys and girls, pics and vids, and have both girls and boys in my collection.  My general interest is in under age 12, solo, with like ages or with adults. Probably priority right now would be boy-on-boy or boy-with-Man, and girl-on-girl.  But really, anything is of interest.  When I get home tonight I can send you a sample of what I have. I have a pile of vids on my computer, and am familiar with programs that would enable easier transmittal (MasterSplitter, etc.).  I am not well set up to work with real mail, however.  If you have a list of what you have, I could let you know if I have stuff outside of that list.  If you are after fresh home-grown then I am afraid I have nothing to offer there.  All of mine were gathered via Kazaa and usegroups. Bunches of them, but it's possible that you already have them.  Do you deal in pictures as well? I have a bunch there as well."  In addition, on March 17, 2005, JIM SARON sent an e-mail containing three attachments.  Two were identical to the videos sent to Inspector Beaty that depicted child pornography as described above. The third attachment was the MasterSplitter program that JIM SARON explained was used by him to split large digital videos into smaller files which could be more easily shared.

8

(16).    On December 13, 2005, I received digital media that contained the investigative data collected by Postal Inspector Clayton Gerber ("Inspector Gerber"), USPIS, Washington Division, Columbia, MD, through the course of his email exchanges with JIM SARON.  A review of the information disclosed several e-mail exchanges between "jimsaron@yahoo.com" and Inspector Gerber's undercover e-mail account.  On March 15, 2005, JIM SARON mentioned that "I saw your post regarding converting some of the classic old-school movies of "a certain sexual subject area" on alt.chxld.mxlexter.com" I am very interested in anything you may have that you would be willing to share…I have accumulated quite a few odds and ends (may even be stuff you converted!) that I could share.  Not a cop, and really interested in sharing pics and vids and the like." On March 16, 2005, in response to Inspector Gerber's email, JIM SARON sent an e-mail in which he stated "I am interested in both boys and girls, pics and vids, and have both girls and boys in my collection. My general interest is in under age 12, solo, with like ages, or with adults…When I get home tonight I can send you a sample of what I have."

(17).    On December 13, 2005, I contacted the YAHOO Custodian of Records, who confirmed that YAHOO ID "jimsaron" was still a valid account.

(18).    On December 21, 2005, Inspector Gerber and I agreed to send a reply to "jimsaron@yahoo.com" using Inspector Gerber's undercover account that JIM SARON had previously corresponded with.  The e-mail was returned by the Yahoo! e-mail system because the account was no longer active.

(19).    On December 21, 2005, I again contacted the Yahoo! Compliance Team and was informed that Yahoo ID "jimsaron" does "exist" but that they could not provide any further details.

9

(20).    On December 22, 2005, I reviewed the Yahoo! Compliance Guide for Law Enforcement, which states that they retain account data for the following periods of time:

|  |  |
|---|---|
| Subscriber Information: | 18 months of inactivity |
| E-mail: | 4 months of inactivity |
| Account Log in IPs: | 30 days |

(21).    On January 6, 2006, I received digital media from Greg Kerr, Deputy Information Technology Security Manager, NASA Headquarters, Washington, DC, that contained data extraction from the NASA HQ Web ContExt filtering system (a Web activity monitoring application) for ROBINSON's NASA computer (IP 131.182.106.251).  I reviewed the data and discovered that IP 131.182.106.251 was used to view 67 images from IP 68.142.227.232 (*up1.ph.vip.re2.yahoo.com*) that depicted two young, apparently pre-pubescent females in various stages of dress, mostly nude, and in sexually provocative poses/positions and/or lasciviously displaying their genitalia.  All of the images appeared to be from one series and depicted the same two females.  The logs recorded this activity on January 3, 2006, between 16:00 and 16:06.

(22).    On January 31, 2006, I received a return to a NASA Inspector General Subpoena return from Adelphia Communications for any accounts subscribed to by ROBINSON.  The return indicated that ROBINSON has had a cable modem account with Adelphia Communications at his residence (XXXX, Sterling, VA 20165) since December 8, 2003.  In addition, the return indicated that his cable modem had a hardware address (MAC address) of XXXX, his current dynamically-assigned IP address was XXXX, and the dynamic host configuration protocol (DHCP) server was listed as "XXXX".

(23).    On February 3, 2006, I received a CD-ROM containing the additional data
extracted from the NASA HQ Web ContExt filtering system by Dru Grote, Senior Security
Engineer, Science Applications International Corporation, NASA HQ for ROBINSON's NASA
computer (IP 131.182.106.251).   I reviewed the data which contained the same 67 images from
IP 68.142.227.232 (*up1.ph.vip.re2.yahoo.com*) that depicted two young, apparently minor
females in various stages of dress, mostly nude, and in sexually provocative poses/positions
and/or lasciviously displaying their genitalia captured on January 3, 2006 and previously
reported on the January 6, 2006 NASA OIG 302.   In addition, there were 122 images captured
on January 9, 2006 between 11:29 and 18:19 (EDT).   These new images were from the same
Yahoo! IP, which appears to be a Yahoo! Photos website that was no longer available.   All of
these new images depicted nude young girls, many of whom appeared to be minors and
lasciviously displaying their genitalia and/or in sexually provocative poses.   In addition, one of
the images appears to depict a minor female simulating masturbation.

(24).    On February 7, 2006, I received an e-mail from Daimon Greaves, Security
Engineer, a NASA HQ contractor employee who works for Science Applications International
Corporation.   In the e-mail he provided me screenshots from the NASA HQ domain controller
security event logs for user "jrobins1".   The screenshots showed the login date and times for
"jrobins1" on January 3 and 9, 2006.   These are the dates and times that the NASA Headquarters
Web ContExt skin tone filtering system captured Robinson's Internet Protocol address viewing
images depicting child pornography.

- Successful logon on Jan 3, 2006 at 07:56 (Local)
- Successful logoff on January 4, 2006 at 09:15 (Local)

11

(25).    On February 22, 2006, Technical Investigator Sean Zadig, NASA OIG/CCD,

NASA Headquarters, obtained log excerpts relating to the login and logoff events of

ROBINSON's NASA Headquarters network domain account "jrobins1" for the period February

6, 2006 through February 17, 2006 from Ben Cohen, Security Engineer, NASA Headquarters.

TI Zadig extracted the first logon and last logoff from each business day and entered this data

into this spreadsheet:

| Date | First Logon | Last Logoff |
|------|-------------|-------------|
| 2/17/2006 | 8:28:17 | 16:34:48 |
| 2/16/2006 | 7:32:36 | 17:56:59 |
| 2/15/2006 | 8:09:18 | 16:53:23 |
| 2/14/2006 | 7:55:07 | 17:22:22 |
| 2/13/2006 | 8:04:45 | 17:35:53 |
| 2/10/2006 | 8:25:24 | 17:25:48 |
| 2/9/2006 | 7:59:16 | 17:42:53 |
| 2/8/2006 | 7:52:02 | 17:51:00 |
| 2/7/2006 | 8:00:27 | 18:07:41 |
| 2/6/2006 | 7:52:02 | 17:10:07 |

(26).    On February 27, 2006, John P. Hernandez, Compliance Case Assistant, Yahoo!,

701 First Avenue, Sunnyvale, CA 94089, faxed a return to the NASA IG Subpoena issued on

January 27, 2006 to myself.  A review of the return provided the following concerning Yahoo!

ID "jimsaron".

| | |
|---|---|
| Login Name: | jimsaron |
| Properties Used: | Mail and Photos |
| Registration IP Address: | 68.235.171.121 |
| Full Name: | Ms. Jim Saron, Mesa, AZ |
| Account Created: | February 25, 2005 |
| Account Status: | Deactivated |

No logins to the account were available.  The registration IP 68.235.171.121 resolves to *68-235-*

*171-121.chvlva.adelphia.net* and is registered to Adelphia Communications, Corporation, 5619

DTC Parkway, Suite 800, Greenwood Village, CO 80111.

12

(27).    On February 27, 2006, Kelly Koppenhafer, Staff Analyst, Child Victim Identification Program, National Center for Missing & Exploited Children provided me, via e-mail, her findings of the review of the images captured by the Web ConText from the laptop computer located in ROBINSON's office at NASA headquarters and the movies sent from the Adelphi account that were previously provided to me by Inspectors Beaty and Evans and NASA HQ Information Technology Security.  Her review disclosed that one of the movie files sent by JIM SARON to Inspectors Beaty and Evans contained a child victim who has been identified by law enforcement: CAPmv2.mpeg.  The child victim was identified by Detective Inspector Holger Kind, German Bundeskriminalamt (BKA – German Federal Criminal Police).

(28).   Based upon the foregoing, I submit that there is probable cause to believe the laptop computer located in the office of JAMES ROBINSON at NASA Headquarters in Washington, D.C. was used to (a) knowingly receive and possess  child pornography that has been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer in violation of Title 18, United States Code, Section 2252A(a)(2)(A); (b) The term "minor" means any person under the age of eighteen years, as defined by Title 18, United States Code, Section 2256(1); (d) The "sexually explicit conduct" means actual or simulated lascivious exhibition of the genitals or pubic area of any person, as defined by Title 18, United States Code, Section 2256(2)(E).

## CONCLUSION

(29).    Based on the foregoing, I have probable cause to believe that violations of Title 18, United States Code, § 2252 have occurred and that evidence, fruits and instrumentalities of said violations are located on the premises of ROBINSON's NASA Headquarters Office, which is more fully described herein.

13

(30).   Based upon the foregoing, your affiant respectfully requests that this Court issue search warrant for ROBINSON's NASA Headquarters Office, authorizing the seizure of the items described in ***Attachment A***.   ***All of the said Attachments*** are incorporated by reference as if set out fully herein.

Further affiant sayeth not.


_____
                                        Paul R. Danley, Special Agent
                                        NASA Office of Inspector General




Sworn to before me and subscribed in my presence,

_____
This 28th day of March, 2006
Washington, DC



_____
                                        United States Magistrate Judge



14

**ATTACHMENT A - EVIDENCE TO BE SEIZED FROM
ROOM 3X78, NASA HEADQUARTERS, 300 E. STREET SW, WASHINGTON, DC 20546**

1.      Any computer equipment and storage device capable of being used to commit, further or store evidence of the offense of receipt, distribution or possession of visual depictions of minors engaging in sexually explicit conduct, in violation of 18 U.S.C. 2252.

2.      Any computer equipment used to facilitate the transmission, creation, display, encoding or storage of data, including word processing equipment, modems, docking stations, monitors, printers, plotters, encryption devices, and optical scanners;

3.      Any magnetic, electronic or optical storage device capable of storing data, such as floppy disks, hard disks, tapes, CD-ROMs, CD-Rs, CD-RWs, DVDs, optical disks, printer or memory buffers, smart cards, PC cards, memory calculators, electronic dialers, electronic notebooks, and personal digital assistants;

4.      Any documentation, operating logs and reference manuals regarding the operation of the computer equipment, encryption devices, storage devices, or software;

5.      Any applications, utility programs, compilers, interpreters, and other software used to facilitate direct or indirect communication with the computer hardware, storage devices or data to be searched;

6.      Any physical keys, encryption devices, dongles, and similar physical items that are necessary to gain access to the computer equipment, storage devices, or data;

7.      Any passwords, password files, test keys, encryption codes or other information necessary to access the computer equipment, storage devices, or data;

8.      Any and all correspondence pertaining to the receipt, possession, and/or distribution in interstate and/or foreign commerce of child pornographic images.  The term minors as used in this list of items to be seized means persons under the age of 18 years.

9.      Any and all tapes, cassettes, cartridges, streaming tape, commercial software and hardware, computer disks, disk drives, monitors, computer printers, modems, tape drives, disk application programs, data disks, system disk operating systems, magnetic media floppy disks, electronic mail, tape systems and hard drives and other computer-related operation equipment, in addition to computer photographs, Graphic Interchange formats and/or photographs, digital cameras, slides, scanners, or other visual depictions of such Graphic Interchange format equipment which may be, or are used to visually depict child pornography, child erotica, information pertaining to a sexual interest in child pornography, sexual activity with children, or the distribution, possession or receipt of child pornography, child erotica or information pertaining to an interest in child pornography or child erotica.

10.     Any and all correspondence pertaining to the possession, receipt, or distribution of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. 2256, whether transmitted or received using a computer or similar electronic device, a facility or means of interstate commerce, common carrier, or mail.

11.     Any and all books and magazines containing visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. 2256.

12.     All originals and all copies and all negatives of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. 2256.

13.     Any and all motion picture films, video cassettes, and digital video (or versatile) diskettes (commonly known as DVDs) of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. 2256.

14.     Any and all envelopes, letters, and other correspondence offering to transmit through interstate commerce, including United States Mails or by computer or similar electronic

16                                    - 16 -

device, any visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. 2256.

15.    Any and all envelopes, letters, and other correspondence identifying persons transmitting through interstate commerce, including by United States Mails or by computer or similar electronic device, any visual depiction of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. 2256.

16.    Any and all books, ledgers, and records bearing on the production, reproduction, receipt, shipment, orders, requests, trades, purchases, or transactions of any kind involving the transmission through interstate commerce, including by United States Mails or by computer or similar electronic device, any visual depiction of minors engaged in sexually explicit conduct, as defined by 18 U.S.C. 2256.

17.    Any and all address books, mailing lists, supplier lists; mailing address 1abels, and any and all documents and records pertaining to the preparation, purchase, and acquisition of names or lists of names to be used in connection with the purchase, sale, trade, or transmission, through interstate commerce, including by United States Mails or by computer or similar electronic device, any visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. 2256.

18.    Any and all address books, names, and lists of names and addresses of minors visually depicted while engaged in sexually explicit conduct, as defined in 18 U.S.C. 2256.

19.    Any and all diaries, notebooks, notes and any other records reflecting personal contact and any other activities with minors visually depicted while engaging in sexually explicit conduct, as defined in 18 U.S.C. 2256.

20.    Any and all materials and photographs depicting sexual conduct between adults and

minors.